404 P.2d 134

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**George AKIN, Defendant-Appellant.**

**No. 7691.**

Supreme Court of New Mexico.

July 19, 1965.

Neal & Neal, Hobbs, for appellant.

Earl Hartley, Atty. Gen., Wayne C. Wolf, Frank Bachicha, Jr., Asst. Attys. Gen., Santa Fe, for appellee.

COMPTON, Justice.

The appellant was convicted of the crime of selling marijuana in violation of § 54-7-14, N.M.S.A., 1953. At the trial he offered no testimony or other evidence in his behalf but moved for a directed verdict by reason of entrapment. The motion was denied. His tendered instructions on the defense of entrapment also were refused. Thereafter, upon a verdict of guilty, the appellant was sentenced and he appeals. The sole question before us is whether the evidence was sufficient to warrant an instruction on the defense of entrapment.

It is the appellant's position that the testimony of the State's witness William B. Allen, a New Mexico State Police sergeant in charge of the narcotics division, was sufficient to sustain his theory of entrapment which should have been submitted to the jury, and that the court committed prejudicial error in refusing to so instruct the jury.

The testimony of the witness Allen may be summarized as follows: He had been with the narcotics squad about 2 years during which time he had become acquainted with the special language or idioms used by persons engaged in the sale and use of narcotics in New Mexico. It is customary for the state police to use informers in connection with their work related to narcotics. Allen first got the impression that the appellant might be peddling dope in the Hobbs, New Mexico, area from an informer, a known narcotics user, who introduced him to the appellant as a robber on parole or a person of low repute of some nature. Allen's purpose in getting introduced to the appellant was to set up an illegal sale of marijuana, if the appellant was in the business.

Allen's introduction to the appellant took place at the latter's house in Hobbs on March 18, 1962. On this occasion the parties drank beer together and Allen, in addition to paying the appellant fifty cents a can for beer, purchased marijuana from a roomer in appellant's house known as "Stooge" Goodson. During the course of their conversation Allen asked the appellant "if he had anything" meaning, in the language used by those engaged in narcotics traffic, did he have any narcotics. The appellant replied "Man, I don't keep that stuff—none of that stuff around the

house," but indicated that he had some stashed away out in the country.

The second meeting took place at the appellant's house on March 23, 1962. At this time Allen, the informer, the appellant and his wife, and the roomer Goodson, drank whiskey together. They also smoked marijuana, except Allen who only pretended to do so. Again Allen purchased marijuana from Goodson, in the presence of the appellant, but did not ask the appellant if he had any for sale.

The third meeting between Allen and the appellant took place the following day, on March 24th, outside of the Sunshine Club in Hobbs. In response to Allen's query "if he had anything" the appellant replied "Man I ain't got nothing. We smoked them all up last night and I won't have anything until the man gets in tonight or tomorrow and Stooge doesn't have anything either."

The fourth and last meeting between Allen and the appellant was at the latter's house on March 31, 1962. At that time Allen took with him a fifth of the appellant's favorite whiskey. The record indicates he had taken whiskey there on one of his previous visits. Present were Allen, the informer, the appellant and his wife. First, they all drank some of the appellant's whiskey and then they drank a substantial portion of that which Allen had taken. As to what occurred on the date, Allen testified:

"* * * We all sat down at the table there and as we were drinking the whiskey I asked Mr. Akin, very quietly, if he had any stuff or anything and he says, he asked me if I had a match box and I didn't have and I asked the informer for a match and he produced a penny match box. I emptied the matches from it and gave it to Mr. Akin and he rose from the table and went into his bedroom, which is located just off of the kitchen. He looked about the room and said, 'I wonder where he put the stuff.' And then he knelt down on his knees and reached under a dresser and withdrew a Prince Albert can. He opened this Prince Albert can and took the match box and filled it with marijuana from the Prince Albert Can."

Allen then testified he paid $5.00 for the match box of marijuana.

 Unquestionably, a defendant is entitled to have the jury instructed on his theory of the case if there is evidence to support that theory. State v. Padilla, 66 N.M. 289, 347 P.2d 312, 78 A.L.R.2d 908; State v. Jones, 52 N.M. 235, 195 P.2d 1020. This is true whether the issue is fairly raised by evidence adduced by the State or by the defendant. State v. Heisler, 58 N.M. 446, 272 P.2d 660. Entrapment as a valid defense under certain circumstances was recognized by this court in

State v. Roybal, 65 N.M. 342, 337 P.2d 406. In sustaining the trial court's refusal in that case to instruct on the defense of entrapment, we said:

"We recognize the rule that it is not permissible for an officer to initiate the criminal act, nor to use undue persuasion or enticement to induce the defendant to · commit a crime, when without such conduct upon the part of the officer the defendant would not have committed such crime.

"However, it is no entrapment to commit a crime where the officer merely offers an opportunity to a criminal who is ready and willing to commit an offense. If an officer of the law has reason to believe that the law is being violated, he may proceed to ascertain whether those who are thought to be doing so are actually committing a criminal offense. If an officer acts in good faith in the honest belief that the defendant is engaged in an unlawful business, of which the offense charged in the information is a part, and the purpose of the officer is not to induce an innocent person to commit a crime but to secure evidence upon which a guilty person can be brought to justice; the defense of entrapment is without merit. * * *" citing 22 C.J.S. Criminal Law § 45, p. 99.

See also Sandoval v. United States, U.S. C.A., 10th Cir., 285 F.2d 605, and Bush v. United States, U.S.C.A., 10th Cir., 218 F. 2d 223.

Also, in Roybal, we stated that while suspected persons can be tested by being offered an opportunity to transgress the law, they may not be put under any extraordinary temptation or inducement, and cited United States v. Wray, D.C., N.D. Ga., 8 F.2d 429, wherein, with respect to the question of what constitutes undue persuasion or · enticement, the court said, in part:

"* * * A suspected person may be tested by being offered opportunity to transgress in such manner· as is usual therein, but may not be put under extraordinary temptation or inducement. Thus a morphine peddler usually deals with addicts. An officer, in testing a supposed peddler, may properly pretend to be an addict, with their common discomforts and craving for the drug, thus giving color to the ruse, and he may offer a liberal price for the drug, and manifest considerable persistence, for these things are common in such dealings. But·he could not pretend to be in excruciating pain, or to have a wife or friend in extremity of suffering, to appeal thus to humanity, or offer any fabulous price for the drug. * * * The question, I repeat, is not one of laying a trap or of trickiness or deceit, but one of

seduction or improper inducement to commit crime. The former is permissible and often necessary to enforce the law. The latter is not. * * * "

In this connection see also Ryles v. United States, U.S.C.A., 10th Cir., 183 F.2d 944; People v. Gonzales, 136 Cal.App.2d 437, 288 P.2d 588; Commonwealth v. Kutler, 173 Pa.Super. 153, 96 A.2d 160.

■ We are aware, as pointed out by the appellant, that the facts in State v. Roybal, supra, as well as in some of the other cases cited, were much simpler and less time-consuming than those present here, and that the acts with which the Roybals were charged and convicted, i. e., operating a game of chance and allowing a game of chance to be operated on the premises, were already in progress when the officers arrived. Nevertheless, it is not necessary that a suspected crime be in the process of being committed in order to show a predisposition to commit that crime. Nor does the necessity of having to resort to a greater degree of subterfuge, or to exercise more persistence in making inquiries to set up an illegal sale of marijuana, without more, constitute evidence of illegal entrapment. The evidence here shows nothing more than offers by Allen to the appellant of an opportunity to commit the act which Allen in good faith believed he was committing or willing to commit. The suggestion that the evidence that Allen supplied the appellant with his favorite brand of whiskey would support a finding of undue inducement is without merit. The testimony is undisputed that the appellant not only dealt in the illegal sale of beer, but drank beer and whiskey of his own as well as that furnished by others.

■ The appellant next contends that the only evidence of the appellant's predisposition to sell marijuana is the testimony of Allen regarding conversations between the parties. It suffices to say this testimony is unchallenged in the record.

■ Finding no evidence of entrapment, we conclude that the trial court properly refused to instruct the jury on that defense.

The judgment should be affirmed. It is so ordered.

NOBLE and MOISE, JJ., concur.